## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GROVER MISKOVSKY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-05-1436-HE** |
| | ) | |
| **DAVID PARKER, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28
U.S.C. § 2241 seeking a writ of habeas corpus.  United States District Judge Joe Heaton
referred the matter to the undersigned Magistrate Judge for proceedings consistent with
28 U.S.C. § 636(b)(1)(B).  After the Court denied Respondent's two motions to dismiss,
Respondent filed a response to which Petitioner replied.  The undersigned expanded the
record and ordered supplemental briefing.  The supplemental briefs have been filed and
the petition is now at issue.  For the following reasons, it is recommended that the
petition be denied.

Petitioner currently is incarcerated at the James Crabtree Correctional Center
where he is serving consecutive 84-year, 7-year, and 2-year sentences for convictions of
racketeering, indecent exposure, and attempted perjury by subornation entered in
Oklahoma County District Court Case No. CF-1999-1787.  Response, Ex. 1, p. 1.[2]

---

[1] David Parker is now the Warden of the James Crabtree Correctional Facility where Petitioner is
incarcerated currently.  Pursuant to Federal Rule of Civil Procedure 25(d)(1) and 28 U.S.C. § 2243, Warden
Parker is substituted for Eric Franklin as Respondent in this suit.

[2] Citations to page numbers of Respondent's exhibits refer to the handwritten page numbers located
at the bottom of each page.

Petitioner claims that he was denied the Fourteenth Amendment right to due process in connection with a disciplinary proceeding that occurred during his confinement at the Lexington Correctional Center.  Petition, pp. 1-2.

## I.  BACKGROUND

On August 27, 2004, Petitioner was in Lexington's leisure library under the supervision of Correctional Counselor Nelson.  Petitioner left the library when the "yard" was "closed" and headed towards his cell, unit 3-A2-B.  Id.; Response, Ex. 2, pp. 1-2. Informed that Petitioner left the library when the yard was closed and did not return to the library as directed by Counselor Nelson, Officer Cardwell approached Petitioner's cell and found its window obstructed.  Response, Ex. 2, pp. 1-2.  Officer Cardwell entered Petitioner's cell, searched it, and discovered two box blades concealed in the light fixture along with a screwdriver tip.  Id. at 1-3, Ex. 3, p. 5; Petition, pp. 1-2.  He drafted a Misconduct Report and Incident Report describing his findings.  Response, Ex. 2, pp. 1-2. As a result of Officer Cardwell's discovery, Petitioner and his cellmate, Robert Simmons, were charged with possession of contraband in violation of Oklahoma Department of Corrections ("DOC") Rule 09-2.[3]  Id.; Petition, p. 3.

Petitioner received a copy of Officer Cardwell's Misconduct Report on September 1, 2004, and requested a hearing on the charge at that time.  Response, Ex. 2, p. 1.  The Unit Manager's secretary, Kim Arthur, was appointed to serve as the disciplinary investigator ("DI") for Petitioner and Simmons' misconduct charges and she prepared an

---

[3] Rule 09-2 makes it a violation of DOC rules to possess "any . . . weapon [or] . . . sharpened instrument."  A breach of Rule 09-2 is categorized as a Class X offense, the most serious type of prison misconduct, and carries mandatory penalties including the revocation of earned credits.  Okla. Dep't of Corr. Operations Procedure 060125, Attach. A (hereinafter "OP").

Investigator's Report of the incident.[4] Petition, p. 3; Respondent's Supplement, Ex. 6, p.4.

Over the next eight business days, Petitioner submitted twelve Request to Staff ("RTS")

forms asking the DI to gather evidence that he believed would be helpful in preparing his

defense.[5]  Petitioner asked the DI to obtain:

    a.    a copy of Post Order 12,[6] which Petitioner contends requires officers to conduct a pre-placement "shakedown" search whenever an inmate is transferred in or out of a cell;

    b.    shakedown logs for Petitioner's cell, unit 3-A2-B;

    c.    statements from and/or answers to questions directed to: (1) inmate Gary Miller and Counselor Nelson (relating to Petitioner's unauthorized departure from the library), (2) Officer Schrader and Officer Blankenship (conducted prior shakedowns of Petitioner's cell), (3) Robert Simmons (Petitioner's cellmate), and (4) Officer Cardwell (discovered contraband at issue and drafted Misconduct Report);

    d.    work orders for repairs to the light fixture in Petitioner's cell;

    e.    photographs of the light fixture in Petitioner's cell and of a "properly installed light fixture" from another cell;

    f.    security logs documenting the dates when Petitioner's cellmates in unit 3-A2-B moved in and out of the cell; and

    g.    disciplinary history records for all of Petitioner's cellmates in unit 3-A2-B.

See Petition, pp. 3-4; Response, Ex. 2, pp. 25-54..

---

[4] According to DOC regulations, "[t]he investigator is responsible for gathering all relevant evidence and/or witness statements and will accept any documentary evidence submitted by the inmate during the investigation." OP-060125. II.C.   The investigator acts as a neutral party and refrains from determining guilt or innocence.  Id.

[5] The record of Petitioner's disciplinary proceeding contains an undated thirteenth RTS form which, unlike all the other RTS forms that Petitioner submitted, bears no indicia that it was actually given to a prison staff member for action.  Response. Ex. 2, p. 56.

[6] Post orders identify duties for prison staff to perform and the procedures for carrying out assignments.  See OP-040113. IV.A.

Four days before Petitioner's disciplinary hearing, the DI gave him several evidentiary items, including:

a.  the Misconduct Report and Incident Report containing Officer Cardwell's statements;

b.  the Investigator's Report;

c.  Witness Discretionary Action Records[7] showing that: (1) Gary Miller and Counselor Nelson's statements would be excluded because they had no direct knowledge of the facts, (2) Robert Simmons and Officer Blankenship refused to give a statement, (3) Officer Cardwell completed a written report documenting the incident; and (4) Officer Schrader gave a telephone statement;

d.  a copy of Gary Miller's statement;

e.  a copy of Officer Schrader's telephone statement;

f.  shakedown logs for Petitioner's cell spanning from shortly after Petitioner moved into unit 3-A2-B through August 27, 2004; and

g.  a photocopy of the blades and screwdriver tip found in Petitioner's light fixture.

Response, Ex. 2, pp. 1-2, 6-11, 13, 25-27. The DI did not provide Petitioner the remainder of the documents that he requested because she determined that they were either irrelevant or information that could not be released to an inmate. Id. at 34-36, 38, 43, 45. The DI did not give Petitioner statements or answers to questions intended for his listed witnesses, aside from Officer Schrader and Gary Miller, because some of the witnesses declined to give a statement and because the DI refused to submit Petitioner's proposed

---

[7] A DI may elect to take an identified witness' statement in lieu of allowing direct testimony at the hearing or disqualify a witness. A Witness Discretionary Action Record documents whatever action the DI chooses to take. OP-060125. II.D.1.

statements and interrogatory-style questions to the witnesses for signature or answers. Id. at 6-11, 39, 41, 47; Petition, p. 4.

Petitioner's disciplinary hearing was scheduled for September 13 and rescheduled to the following day to permit further investigation.  Petitioner waived his right to an additional 24 hours of preparation time.  Response, Ex. 2, p. 12.  At the hearing, the disciplinary hearing officer ("DHO"), Officer Tunstall, accepted the written documents that Petitioner tendered to support his defense which included his lengthy written statement and supplemental statement and nine RTS forms documenting Petitioner's efforts to obtain evidence.  Id. at 14-24, 32; Ex. 3, p. 5.

The DHO concluded that Petitioner was guilty of the charged misconduct and cited the Incident Report, Misconduct Report, photocopies of the contraband, and shakedown logs for Petitioner's cell as evidence supporting her determination.  In particular, the DHO noted that Petitioner's cell was searched at least twice in July of 2004, while Petitioner and Simmons were cellmates, and that inmates have a responsibility to ensure that contraband is not in their cells.  Id. at Ex. 2, p. 66.

As punishment for the disciplinary conviction, Petitioner lost 365 days of good time credit, was placed in disciplinary segregation for 30 days, and was given a Level 1 restriction for 90 days.[8]  Id.; Petition, p. 7.  After conducting an internal due process review of the procedures employed in Petitioner's disciplinary hearing, the Facility Head affirmed the DHO's decision. Response, Ex. 3, pp. 5-6.  The Designee for the  Director denied Petitioner's appeal from the Facility Head's decision on December 13, 2004.  Id.

---

[8] A Level 1 restriction eliminates an inmate's ability to accumulate good time credits for the duration of the restriction.  OP-060211. II.B.

at 14.  Approximately one year later, Petitioner filed this action seeking a writ of habeas corpus.

## II.  DISCUSSION

Petitioner raises four grounds in support of his petition for habeas relief.[9]  First, Petitioner contends that Officer Cardwell's report was "grossly incomplete," and failed to provide adequate information upon which the DHO could find him guilty of the misconduct offense.  Petition, p. 9.  Second, he claims that the hearing process was fundamentally unfair because certain evidentiary requests which he claims were necessary to prove his innocence were denied by the DI and the DHO.  Petition, p. 13.  Third, he claims that the DI was incompetent and inadequately trained, making her unclear about her responsibilities to Petitioner and unable to provide him with access to material evidence needed for his defense.  Petition, p. 20.  Fourth, and finally, he claims that his right to due process was violated when he was denied a staff representative.  Id.

It is Respondent's position that Petitioner's disciplinary proceeding complied with constitutional standards, and that the standard of review applicable to this action requires denial of the writ because minimal requirements of due process have been satisfied and the decision is supported by some evidence. Response, pp. 4, 7.  He contends that the due process clause has never been construed to require an error-free proceeding, and that a failure to meet such a standard does not entitle Petitioner to relief. Id. at 6-7.

---

[9]Petitioner lists three grounds for relief, Petition, p. 9, and then argues only two of those grounds. Petition, p. 9, 13.  However, his second ground for relief contains two sub-propositions which the undersigned has construed as Grounds Three and Four.  Petition, p. 20.

**A. Standard of Review**

Oklahoma inmates have a protected liberty interest in earned time credits.  See Okla. Stat. tit. 57, § 138(A); see also Waldon v. Evans, 861 P.2d 311, 313  (Okla. Crim. App. 1993).  As a result, inmates who earn sentence credits are entitled to due process protections before such credits are taken away.  Mitchell v. Maynard, 80 F.3d 1433, 1444-45 (10th Cir. 1996).   However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  An inmate receives due process in conjunction with an institutional disciplinary proceeding if he is given: (1) advance written notice of the disciplinary charge, (2) an opportunity, consistent with the institutional safety and correctional goals, to present witnesses and documentary evidence, and (3) a written statement of the evidence relied on and the reasons for any disciplinary action.  Superintendent v. Hill, 472 U.S. 445, 454 (1985).  If these protections are provided and there is "some evidence" to support the resolution of the disciplinary charge, then the Due Process Clause's procedural requirements have been satisfied.  Id.; Mitchell, 80 F.3d at 1445 (noting that the scope of a court's due process review of a prison disciplinary proceeding is limited to determining whether Wolff's requirements are met and there is some evidence to support the decision).  Petitioner does not argue that he received insufficient notice of the charges against him; instead, his grounds focus on whether the other due process protections were provided.

**B.  Petitioner's Grounds for Relief**

**1.  Whether Officer Cardwell's Report was Sufficient for a Finding of Guilt**

In his first ground for relief, Petitioner claims that the DHO relied solely on the report of Officer Cardwell in finding him guilty of the misconduct offense, and that the report was "grossly incomplete." Petition, p. 9.  He claims that the report did not describe the light fixture, or the "convoluted security procedures the officer had to perform" in order to discover the box blades.  Id. at 9-10.  He claims that a "full and complete description of the physical evidence, and the convoluted security procedures the officer had to perform in dismantling the security mechanism securing the light fixture" would have shown there was not sufficient cause to find Petitioner in even constructive possession of the box blades.  Id. at 10.

In this ground, Petitioner essentially attacks the reliability and the sufficiency of the evidence the DHO relied upon in finding him guilty. Petition, pp. 9-13. However, when reviewing whether the evidence was sufficient in the context of a prison disciplinary proceeding, the sole question is whether there was "some evidence" supporting the DHO's decision:

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary [hearing officer] to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is **any evidence** in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-56 (quoting United States ex rel. Vajtauer v. Comm'r, 273 U.S. 103, 106 (1927)) (emphasis added).   The decision may be upheld even if there is only "meager" evidence to support it.   Id. at 457; Mitchell, 80 F.3d at 1445.

The undersigned finds that some evidence supported the DHO's decision in Petitioner's case.   The DHO relied on several items to determine Petitioner's guilt: (1) the Incident and Misconduct Reports; (2) photocopies of the box blades; (3) shakedown logs of Petitioner's cell; (4) the presumption of constructive possession; and (5) the absence of Officer Cardwell's motive to fabricate evidence of misconduct.   Response, Ex. 2, p. 66. Of particular significance were shakedown logs showing that while he shared the cell with Simmons, Petitioner's cell was searched for contraband on two occasions prior to the day Officer Cardwell found the blades in the light fixture.   The officers who conducted the prior searches, Officer Schrader and Officer Blankenship, did not find box blades in Petitioner's cell.   Id. at 62-63.   Officer Schrader gave a statement asserting that he "always" searches light fixtures when he conducts a cell shakedown, although he could not remember specifically that he did when he searched Petitioner's cell.   Id. at 9. From this, the DHO inferred that either Petitioner or Simmons brought the box blades into the cell since they were the cell's only occupants.   When these facts were combined with the presumption of constructive possession, there was clearly some evidence supporting the DHO's conclusion that Petitioner possessed the blades.   Id. at 66.

The Tenth Circuit Court of Appeals has held that a misconduct report in combination with the presumption of constructive possession is sufficient evidence to meet the "some evidence" standard.   See Howard v. United States Bureau of Prisons, 487

F.3d 808, 812 (10th Cir. 2007); <u>Longstreth v. Franklin</u>, No. 07-6026, 2007 WL 1874236, at *3 (10th Cir. June 29, 2007) (finding that inmate's prison disciplinary proceeding due process claim "fails because the incident report was 'some evidence.'").[10]

The presumption of constructive possession makes an inmate responsible for anything found in his cell absent evidence that makes a finding that the inmate possessed the item so unreliable that it does not satisfy the minimum constitutional "some evidence" standard. <u>See</u> <u>Hamilton v. O'Leary</u>, 976 F.2d 341, 345 (7th Cir. 1992). The Tenth Circuit Court of Appeals has recently indicated its agreement with "[t]he proposition that constructive possession provides 'some evidence' of guilt when contraband is found where only a few inmates have access...." <u>Howard</u>, 487 F.3d at 812 (citing <u>Hamilton</u>, 976 F.2d at 345). Inmates may possess items jointly. <u>See</u> <u>Giles v. Hanks</u>, No. 02-3165, 72 Fed. Appx. 432, 433-34 (7th Cir. June 25, 2003) (finding that even if one occupant of a cell concedes ownership of contraband the other occupant may also be held accountable because two individuals may exercise joint possession)(citing <u>United States v. Alanis</u>, 265 F.3d 576, 592 (7th Cir. 2001)); <u>Mason v. Sargent</u>, 898 F.2d 679, 680 (8th Cir. 1990) (concluding that prisoner could not prevail in an action under 42 U.S.C. § 1983 where he was held accountable for contraband found in a shared locker even after his cellmate admitted to placing the contraband into the locker). Further, application of the constructive possession rule is not defeated by a claim, as Petitioner makes in the petition, that prison officials failed to search a cell for contraband prior to assigning prisoners to the cell. <u>Lasley v. Godinez</u>, 833 F. Supp. 714, 718 (N.D. Ill. 1993). (quoting

---

[10] This and any other unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

Hamilton, 976 F.2d at 345).  Indeed, district courts have upheld the application of the presumption of constructive possession on facts similar to those alleged by Petitioner. See, e.g., Thompson v. Hawk, 978 F. Supp. 1421, 1422-24 (D. Kan. 1997) (finding that presumption of constructive presumption was appropriately applied in case where weapon was found in light fixture of cell occupied exclusively by habeas petitioner in face of petitioner's allegations that he had no knowledge of the weapon in the fixture, no access to the fixture because it required a special tool to open, other inmates could access petitioner's cell under prison policy permitting cell doors to be open during the day, and where shakedown records failed to demonstrate cell had been searched prior to petitioner's occupation of the cell).

Petitioner also claims that the DHO was biased because she "predetermined" his guilt, considered only Officer Cardwell's uncorroborated Misconduct Report in arriving at her decision, and ignored the evidence that he submitted at the hearing.  Petition, pp. 4-5, 9, 13.  Petitioner also claims that the Unit Manager, who was originally designated as the DHO for the hearing, took certain actions inconsistent with the requirement that the DHO act impartially.  Amended Traverse, pp. 2, 5.

Inmates do have a right to an impartial decisionmaker in disciplinary proceedings. Gwinn v. Awmiller, 354 F.3d 1211, 1220 (10th Cir. 2004).  "A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing." Miller v. City of Mission, 705 F.2d 368, 372 (10th Cir. 1983).  However, "[d]ue process is violated only when 'the risk of unfairness is intolerably high' under the circumstances of a particular case." Mangels v. Pena, 789 F.2d 836, 838 (10th Cir. 1986) (quoting Withrow v. Larkin,

421 U.S. 35, 58 (1975)).    Furthermore, the honesty and integrity of the tribunal are presumed so "there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." Id.

In light of this standard, Petitioner's bare allegations impugning the DHO's impartiality do not overcome the presumption that she acted with honesty and integrity at the hearing.  Petitioner does not support his claim that she "predetermined" his guilt with any specific factual allegations and, judging from the record of the proceeding, the assertion lacks a legitimate basis.  See, e.g., Response, Ex. 3, p. 5.  The DHO accepted the evidence Petitioner tendered to her at the hearing as well as his lengthy statement.  Id.; Response, Ex. 2, p. 66.   The mere fact that the DHO concluded that the Misconduct Report was credible evidence of Petitioner's guilt does not mean that she did not consider the evidence that he submitted or acted with actual bias in the case.  See, e.g., Green v. Dorrell, 969 F.2d 915, 919 (10th Cir. 1992) ("[A]dverse rulings against a litigant cannot in themselves form the appropriate grounds for disqualification.").  Petitioner's claims that the DHO was not impartial are unsubstantiated.

In summary, the DHO's finding of guilt was clearly supported by "some evidence," which is all that due process requires.    See Hill, 472 U.S. at 456.   Accordingly, it is recommended that relief be denied on Ground One.

**2.  The Denial of Petitioner's Requests for Evidence**

In his second ground for relief, Petitioner claims that he requested specific documents and information within the exclusive possession of DOC staff, but that his requests were denied by the DI.  Petition, p. 13-14.  He also alleges that he requested the

addition of certain witnesses which he claims were also denied. Id. at 15. He claims that this constituted fundamental error, denying him the right to present exculpatory, documentary, and testimonial evidence, and that it undercut his right to prepare his "affirmative defense to prove his innocence...." Id. at 16. He further claims that the actions of the DI with regard to his requests demonstrated her bias and lack of neutrality. Id. at 19. Petitioner also alleges that the DHO failed to consider the refusal of the DI to provide the requested documents and witnesses. Id.

To provide due process, prison officials must give an inmate facing disciplinary proceedings the opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. The scope of a prisoner's right to call and confront witnesses and present documentary evidence is committed to the sound discretion[11] of prison officials who must exercise their discretion on an individualized basis. Ramer v. Kerby, 936 F.2d 1102, 1104 (10th Cir. 1991). Reviewing courts should pay deference to a prison official's decision "to limit access to other inmates to collect statements or to compile other documentary evidence," See Wolff, 418 U.S. at 566, recognizing that running a prison is an "extraordinarily difficult undertaking":

> We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's

---

[11] In a recent case which undoubtedly tested the outer limits of this discretion, the Tenth Circuit held that an inmate's due process rights were violated by a DHO's refusal to even review a videotape of the incident giving rise to the misconduct charge and which might have conclusively established the inmate's innocence. Howard v. United States Bureau of Prisons, 487 F.3d 808, 814 n. 4 (10th Cir. 2007). There is nothing even approaching such potentially-conclusive evidence at issue in the current action.

interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents

Wolff v. McDonnell, 418 U.S. 539, 566-567 (1974).

Although Petitioner claims that the DI denied "all" of his evidentiary requests, this allegation is hyperbolic because the DI provided Petitioner with many of the documents and witness statements he requested. Petition, p. 4. Several days before the hearing, the DI gave Petitioner shakedown logs dating back to 2001 when Petitioner moved into unit 3-A2-B, witness statements from Officer Schrader and Gary Miller, and a copy of the Misconduct Report and Incident Report which contained Officer Cardwell's statements. Response, Ex. 2, p. 4-5, 9, 13, 25-27, 47, 49. At Petitioner's behest, the DI sought statements from Robert Simmons and Officer Blankenship, but they refused. Id. at 10-11.[12] The DI also gave Petitioner a copy of her Investigator's Report, Witness

---

[12] See Oklahoma Department of Corrections, OP-060125, II.D.4 ("witnesses who decline to provide a statement will not be forced to provide a statement or made to testify.").

14

Discretionary Action Records, a photocopy of the blades and screwdriver tip found in his light fixture, and copies of the RTS forms he submitted to her. <u>Id.</u> at 13.

### a. Documents

The documents that Petitioner requested, but did not receive, were: (1) maintenance records for the light fixture in his cell; (2) Post Order 12; (3) pictures of Petitioner's light fixture and a "properly installed" light fixture; (4) security logs; and (5) disciplinary history records for Petitioner's cellmates in unit 3-A2-B.   Response, Ex. 2, pp. 25, 34, 36, 38.   The undersigned finds that prison officials did not deprive Petitioner of his due process right to documentary evidence in refusing these requests because they clearly considered each of his document requests on an individualized basis, and although not required to do so, even noted the reasons why they were denied. Response, Ex. 2, pp. 25, 34; Ex. 3, p. 5 (maintenance records for and photographs of the light fixture in Petitioner's cell and photographs of a "properly installed light fixture);  Response, Ex. 2, pp. 25, 36, (security logs);  <u>Id.</u> at Ex. 2, pp. 25, 38 (Post Order 12 and disciplinary records of other inmates).   Petitioner also contends that the DHO arbitrarily refused to consider a written statement that he submitted which catalogued his efforts to obtain the documentary evidence he wanted to establish his defense; however, because the DI considered each of Petitioner's requests individually and determined that a legitimate institutional reason for denying his requests existed, due process was satisfied. <u>See</u> Response, Ex. 2, pp. 25, 34, 36, 38, Ex. 3, p. 3.

15

### *b. Witnesses*

Petitioner also claims that he was "automatically" denied the right to present witness testimony at the disciplinary hearing, but the record refutes this allegation. Amended Traverse, p. 11.  First, it should be noted that an inmate has no due process right to confront or cross-examine the witnesses against him in a disciplinary hearing. <u>Wolff</u>, 418 U.S. at 567-68.  Contrary to Petitioner's claims, "[p]rison officials are not required to make a written record of the reasons for granting or denying a prisoner's request to call or confront a particular witness." <u>Ramer</u>, 936 F.2d at 1104.  Instead, all that due process requires is for prison officials to make the decision to permit or prohibit an inmate from calling or confronting a particular witness on a case-by-case basis according to legitimate penological considerations.  <u>Id.</u> at 1104-1105.  With regard to calling staff members as witnesses, such concerns would include things such as safety, expense, and staffing requirements. <u>Id.</u>  Here, the record of the investigation shows that the DI considered Petitioner's requests individually and cited a legitimate institutional reason for excluding each witness.  Since the DI's justifications are legitimate bases for refusing an inmate's request for live witnesses, they are entitled to deference.  <u>See</u> <u>id.</u>

Witness Discretionary Action Records show that the DI disqualified Simmons and Officer Blankenship from testifying because they refused to give a statement.  Response, Ex. 2, pp. 10-11.  The DI excluded the testimony of Gary Miller and Counselor Nelson as irrelevant because neither had any knowledge of the misconduct at issue.  <u>Id.</u> at 7-8.  Officer Cardwell stated that the Misconduct Report and Incident Report he prepared contained his statements, but he added that it did not take him five minutes to pull the

items from the light fixture.  Id. at 5-6, 47, 49.  Officer Schrader gave a telephone
statement that the DI gave to Petitioner prior to the hearing.  Id. at 9, 13.

There is no Witness Discretionary Action Record for Ali Scudder whom Petitioner
identified as a witness with knowledge about the maintenance of the light fixture in his
cell.  Response, Ex. 2, p. 35.  However, when Petitioner listed this person as a potential
witness, he indicated to the DI that he "may" need the DI's assistance in obtaining a
statement from the witness.  It is not clear that Petitioner ever requested the DI to actually
obtain a statement from the witness.   Regardless, because it is apparent that prison
officials carefully considered Petitioner's other requests for witnesses, and actually
considered the general subject matter of her proposed testimony – the maintenance of the
light fixture in Petitioner's cell – in the context of Petitioner's document requests, the DI's
failure to document consideration of Petitioner's request does not entitle him to relief.
See Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006) ("errors made by prison
officials in denying witness testimony at official hearings are subject to harmless error
review").

There is also no Witness Discretionary Action Record for Officer Arnold who
Petitioner claims could have provided information about the reliability of the housing
records for Unit 3.  See Petition, pp. 7, 17; Amended Traverse, p. 14.  However, the RTS
form in which Petitioner asked to have Officer Arnold "added" to the Investigator's
Report is not dated and does not appear to have actually been submitted to the DI.
Response, Ex. 2, p. 56.  Even if Petitioner had requested Officer Arnold as a witness, the
record shows that Officer Arnold said he had no memory of any conversation with

Petitioner. <u>Id.</u> at Ex. 3, p. 6.  Petitioner has not shown how the accuracy or inaccuracy of the housing records for Unit 3 would affect the disciplinary decision.  Consequently, the failure to consider a request to add Officer Arnold as a witness, to the extent one existed, was also harmless.  <u>Grossman</u>, 447 F.3d at 805.

Petitioner further claims that the DI's refusal to submit his interrogatory-style questions to Officers Schrader, Blankenship, and Cardwell, and proposed statements to Counselor Nelson and Officers Blankenship, Cardwell, and Schrader deprived him of his right to present witnesses, citing <u>Ramer v. Kerby,</u> 936 F.2d 1102 (10th Cir. 1991).  However, in <u>Ramer</u>, the New Mexico correctional facility policy prohibited inmates from calling correctional officers to testify at disciplinary hearings unless they first submitted interrogatories to a disciplinary committee chairperson.  <u>Ramer</u>, 936 F.2d at 1103.  That is not the policy here, and was not the basis for any decision regarding the appearance of witnesses at Petitioner's disciplinary hearing.

Petitioner also identifies a DOC regulation which he claims supports his right to propound questions to potential witnesses. Petition, p. 19 (citing OP-060125. II.C.4.A (providing that DI will conduct investigation by questioning inmate and any witness who has not provided a written statement)).  However, even if Petitioner's interpretation of the policy is correct, he cannot rely on the DOC's alleged failure to follow its own regulations to establish a violation of due process.  "[A] failure to adhere to administrative regulations does not equate to a constitutional violation," and thus the relevant inquiry is not whether the proceeding complied with prison regulations. <u>Malik v. Kindt</u>, No. 95-6057, 1996 WL 41828,*2 (10th Cir. Feb. 2, 1996) (quoting <u>Hovater v. Robinson</u>, 1 F.3d 1063,

1068 n. 4 (10th Cir. 1993)).  Rather, as set forth above, this Court's review of Petitioner's disciplinary proceeding is "limited to whether the three steps mandated by <u>Wolff</u> were followed and whether there was some evidence to support the disciplinary [hearing officer's] findings."  <u>Mitchell</u>, 80 F. 3d at 1445; <u>see also</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 481-82 (1995) (noting generally that prison regulations do not confer protected liberty interests in the enforcement of those regulations); <u>Diaz v. McGuire</u>, No. 05-3149, 154 Fed. Appx. 81, 84-85 (10th Cir. Nov. 14,  2005) <u>cert.</u> <u>denied</u>, 126 S.Ct. 1446 (2006) (prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause); <u>Kirkland v. Provience</u>, No. 94-6245, 1995 WL 377088, *7 (10th Cir. Feb. 2, 1995)(finding Department of Corrections' regulations governing disciplinary proceedings do not generally create liberty interest in strict enforcement of those rules and failure to comply with such regulations is not a violation of due process).  Thus, even if the Department of Corrections failed to strictly follow its own regulation here, that failure did not in and of itself deprive Petitioner of due process.

### c. The Alleged Exculpatory Statement of Robert Simmons

As noted above, the DI excluded Simmons as a witness because he ultimately refused to give a statement. However, after the initial briefing in this action, an issue arose regarding whether Simmons made an exculpatory statement to the DI during an earlier stage of her investigation.   In his Motion to Expand the Record, Petitioner provided a sworn statement from Robert Simmons, who was his cellmate at the time the box blades were found, attesting to facts tending to support his allegations.  <u>See</u> Doc. No. 23, Ex. 1 (denominated as Petitioner's Exhibit 20). The undersigned then ordered the

record of this action expanded to include the sworn statement of Robert Simmons, and also ordered supplemental briefing from the parties discussing whether the events relayed in Simmons' statement, if true, affected Petitioner's due process right to present witnesses in his defense.  The following description of the events supporting Petitioner's claims is taken largely from Simmons' statement.

Petitioner and Robert Simmons were both charged with possession of contraband as a result of Officer Cardwell's discovery of the box blades in their cell.  Response, Ex. 2, p. 1; Respondent's Supplement, Ex. 6, p.1.  The Unit Manager, Officer Peck, appointed his secretary as the DI responsible for investigating both Petitioner and Simmons' misconduct charges.  Petitioner claims that shortly after he and Simmons received copies of the Misconduct Report, Simmons went to Officer Peck's office to speak with the DI about handling the charge informally.  He claims that Simmons often kept blades in his cell because he used them for his hobby and he told the DI that the Unit Counselor knew that he had blades for that reason.  Petition, p. 15.[13]  According to Petitioner, Simmons told the DI that the box blades that Officer Cardwell found in the light fixture belonged to him and that Petitioner was not aware of their presence.  Petition, pp. 4-5, 15.  Petitioner maintains that when the DI did not agree to informally resolve Simmons' misconduct charge, Simmons became irritated and told her that he would not admit that the blades found in the light fixture belonged to him if she was going to force him to go through the formal disciplinary process.  The DI informed Simmons that if he wanted to,

---

[13]While the undersigned makes no credibility determinations about this, it is noted that Kent Peck, Unit Manager, gave an affidavit that box blades are not allowed for any reason at the Lexington facility. Affidavit of Kent Peck, Respondent's Sur-Reply, Ex. 1 (listed as Respondent's Ex. 7 on the document).

he could speak with Officer Peck further about the issue. Simmons' Statement, p. 1, Petitioner's Request for Ruling on the Merits, Attch. 1.

Petitioner contends that a few days later, Simmons returned to the office to speak with Officer Peck and find out whether he would drop the charges after Simmons explained why he had box blades in his possession.  Officer Peck informed Simmons that the correctional officer who discovers a violation of DOC rules has the discretion to determine whether a formal misconduct charge should be brought and that since Officer Cardwell had chosen to draft a misconduct report, the charge would have to be formally resolved with a hearing.

Petitioner devotes much of his briefing to arguing that the DI's failure to record the substance of Simmons' alleged exculpatory admission to ownership of the box blades found in their cell violated his due process rights.  Petition, pp. 4-5, 15-16; Amended Traverse, pp. 2-3, 15, p. 7 insert; Sur-Sur Reply, p. 9.  In support of his claim Petitioner points to a DOC regulation which directs the DI to submit facts discovered during the investigation to the DHO, including "all relevant information pertinent to the charge, to include any mitigating or exculpating information."  Petition, pp. 15-16 (citing OP-060125. II.C.4.A).

Assuming for the moment that Simmons' statement would be covered by this provision, the DI's failure to document it did not violate Petitioner's due process rights. As discussed above, prison regulations do not create due process guarantees because the process due an inmate in a prison disciplinary proceeding is measured by the Fourteenth Amendment. Diaz, 154 Fed. Appx. at 84-85. Therefore, to the extent Petitioner's

allegations concerning the failure to document Simmons' allegedly exculpatory admission are true, that the failure may have violated the DOC's regulations does not necessarily mean it also deprived him of a due process.

However, Petitioner also contends that the DI's failure to record the existence and substance of Simmons' admission deprived him of the right to present evidence in his defense.  See Petition, pp. 4-5, 15-16.  At the outset of the current analysis, the undersigned noted the recent Tenth Circuit Court of Appeals' decision in Howard v. United States Bureau of Prisons, 487 F.3d 808 (10th Cir. 2007), in which the Court held that prison officials violated an inmate's due process rights by failing to produce and review a videotape that may have conclusively exonerated him, where the record did not show the refusal was justified by correctional goals or concerns regarding institutional safety.[14] However, the Court specifically noted that it was not holding in Howard that exculpatory evidence must be disclosed in prison disciplinary proceedings, and that it has not yet determined whether to follow a line of cases in the Seventh Circuit Court of Appeals enforcing that rule.  Howard, 487 F.3d at 814 n. 4 (citing Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir.1992)).  In other words, there was no obligation on the part of the DI to disclose Simmons' statement simply because it was potentially exculpatory.  Instead, the normal analysis applicable to an inmate's  right to call witnesses and present testimony applies.

---

[14]The evidence at issue in Howard was a videotape that an inmate alleged contained exculpatory evidence absolving him of assault and possession of a weapon misconduct charges because it showed that his involvement in a fight was purely defensive. 487 F.3d at 813-814.

Although Petitioner claims that the DI's actions deprived him of his due process right to present evidence of Simmons' alleged admission, the facts of Petitioner's case show the contrary to be true.  First, the DI supplied a reason based upon institutional policies for not producing evidence of Simmons' alleged admission, and when she asked Simmons to give a statement, he refused.  Response, Ex. 2, p. 10, 45.

Second, Petitioner had the ability to obtain the allegedly exculpatory evidence himself.  Petitioner and Simmons were cellmates, and he could have easily obtained a statement from Simmons without the assistance of prison officials.  Petitioner could have then directly submitted Simmons' statement to the DHO at the hearing.  See OP-060125. II.D.5.  The record shows that Petitioner believed Simmons made the admission at least four days prior to their disciplinary hearings,  Response, Ex. 2, p. 45, and that he received the Witness Discretionary Action Record disqualifying Simmons from testifying at least three days before his hearing.  Id. at 10.  Therefore, Petitioner was aware that the only way Simmons' alleged admission could be presented to the DHO was if Petitioner obtained it directly. Petitioner also knew that he could and was permitted to submit written statements to the DHO, because  he submitted his own written statement to her. Response, Ex. 2, pp. 14-24.

Finally, unlike the videotape evidence in Howard,  Simmons' statement admitting to ownership of the box blades is not "significant, perhaps conclusive, evidence that might exonerate [Petitioner] of the acts charged."  Howard, 487 F.3d at 815.  As noted above, the presumption of constructive possession makes an inmate responsible for anything found in his cell absent evidence that makes a finding that the inmate possessed

the item so unreliable that it does not satisfy the minimum constitutional "some evidence" standard.  See Hamilton, 976 F.2d at 345; Howard, 487 F.3d at 812 ("The proposition that constructive possession provides 'some evidence' of guilt when contraband is found where only a few inmates have access is unproblematical.").  Thus, Petitioner's innocence of the charged misconduct does not necessarily follow from Simmons' alleged admission to ownership of the box blades.

Another factor which influences the undersigned's disposition of Petitioner's claim is that the record does not support his contention that Simmons admitted to sole ownership of the box blades that Officer Cardwell found in the light fixture.  Indeed, initially Petitioner himself did not claim that Simmons admitted to exclusive possession of the blades that Officer Cardwell found in their cell.  But as this litigation has evolved, so has Petitioner's story.

What the record does show is that approximately one week after Petitioner and Simmons were charged with the misconduct, Simmons spoke with the DI about the pending charge.  Simmons attests that during the conversation he told the DI:

> I know I had box blades.  I had two box blades in the cell officer Cardwell did not even find when he shook down the cell . . . if [you] are going to make me go through [the formal disciplinary process] I [will not] admit the [blades] they found in the light [are] mine because [you can't] prove they [are].

Simmons' Statement, p.1.  Simmons told Petitioner about this conversation.  Id. at 2. Five days before the hearing, Petitioner asked the DI to "provide me with a statement which sets forth what Mr. Simmons told you concerning his possession of the same **kind** of contraban [sic] found by Sgt. Cardwell on August 28, 2004."  Response. Ex. 2, p. 45.

24

When the DI responded that she would not discuss another inmate's pending disciplinary proceeding with Petitioner, he drafted a proposed written statement for the DI to sign. That statement reads in pertinent part:

> On or about _____ Mr. Robert Simmons #227705, advised this investigating officer, that on August 28, 2004, he had possession of one "Box Blade" in cell 3-A2-B in a bowl, **like** those found by officer Cardwell on August 28, 2004, which the search team overlooked on that date.

Response, Ex. 2, p. 59.  The DI, who Petitioner did not list as a witness, did not sign Petitioner's proposed statement.  In his written statement submitted at the hearing, Petitioner informed the DHO:

> Mr. Simmons has advised the investigating officer, Kim Arthur, that on August 27, 2004, he was, in fact, in possession of a Box Blade[] in the cell on August 27, 2004, **like** those found by officer Cardwell, but that it was **not** one of those which were discovered by the officers who searched the cell on that date.

Response, Ex. 2, p. 18 (emphasis added).

When Petitioner turned to this Court for habeas relief he re-characterized the issue in the Petition as a complaint about the DI's failure to document Simmons' "exculpatory" statement or admission that "he had possession of Box Blades in cell 3-A2-B on August 27, 2004." Petition, pp. 4, 15.  As this litigation progressed, Petitioner's allegations have stretched the content and significance of Simmons' alleged statement even further. Petitioner's Amended Traverse described Simmons' alleged statement as "evidence that someone, other than Petitioner, had exclusive knowledge and possession of the contraband found . . ." and as a "compelling admission that he (Simmons) was the sole person in possession, and with knowledge of the contraband seized by the reporting officer on August 27, 2004." Amended Traverse, p. 15, p. 7 insert.  By the time the

25

Petitioner submitted his Sur-Sur-Reply, Petitioner contended that Simmons "consistently told [the DI] and Peck that the blades were his and he wanted to plead guilty . . . that [Simmons] is the one who had possession of the box blades . . . [and that] [Simmons] never told [Arthur] that the box blades were not his.  To the contrary he told her that the box blades <u>were</u> his . . ."  Sur-Sur Reply pp. 1, 3-5 (emphasis in original).

Thus, the record developed during the disciplinary proceeding when the relevant events occurred simply does not support Petitioner's contention that Simmons' alleged admission carried the evidentiary significance he now claims. What the record does show is that the DI asked Simmons to give a statement in conjunction with Petitioner's disciplinary hearing and he refused to do so.  Response, Ex. 2, p. 10.  If Petitioner's claim that Simmons wanted to provide information to support Petitioner's defense is true, then Petitioner could have obtained a statement from Simmons and submitted it directly to the DHO.  <u>See</u> OP-060125. II.D.5.  However, Petitioner was allowed to present evidence to the DHO that Simmons allegedly confessed to the possession of the box blades. Response, Ex. 2, pp. 13-19.

While Petitioner and Simmons claim that Officer Peck threatened to have Simmons placed in a less desirable facility if he cooperated with the presentation of Petitioner's defense, Officer Peck denies this in his own affidavit.  <u>See</u> Simmons' Statement, p. 2; Amended Traverse, p. 2; Respondent's Sur-Reply, Ex. 1.[15]  Regardless, Petitioner presented information to the DHO about Simmons' alleged confession and for the reasons she stated, she found Petitioner guilty.  Because prison officials' actions did

---

[15] Again, the undersigned is not making any credibility findings on this issue.

not interfere with Petitioner's ability to present Simmons as a witness, they did not

violate his due process right to gather evidence and present witnesses.

### 3. Untrained Disciplinary Investigator

In his third ground for relief,[16] Petitioner claims that his right to due process was

"doomed from the outset of the investigator's assignment...." Petition, p. 20. He claims

that the person assigned was not properly trained to provide him with access to material

evidence he needed for his defense. Id. He claims that as the Unit-3 Manager's secretary,

she had not received the training required by DOC policy, leading to confusion,

frustration, and a "conflict of interest." Id. He claimed that she repeatedly solicited

advice from the DOC General Counsel, and that he was entitled to a competent

investigator who was not interested in placing unfair limitations on his defense. Id.

Even if Petitioner could successfully demonstrate that the DI assigned to his case

was biased, incompetent, or unqualified, her actions would not have deprived Petitioner

of any due process guarantee because there is no due process right to the assistance of

a competent or impartial investigator. See Hill, 472 U.S. at 454; Diaz, 154 Fed. Appx. at

85 (noting that "an adequate prehearing investigation is not among the minimum due

process protections" provided to inmates).

Moreover, the undersigned disagrees with Petitioner's characterization of the DI's

actions. Rather than evidence of incompetence or bias, the actions that the DI took to

assist Petitioner with the investigation of the charges show that his numerous requests

for evidence and assistance were carefully considered and that material was made

---

[16] Petitioner actually identifies this ground as a "sub-ground" of Ground Two.  Petition, p. 20.

available to him when doing so was not inconsistent with institutional concerns.  The DI sought statements from the witnesses Petitioner listed, attempted to obtain statements from the witnesses Petitioner requested, procured the documentary materials that could be released to Petitioner, consulted with the DOC's general counsel concerning what could and could not be released to Petitioner, accepted the statements Petitioner submitted to her for presentation at the hearing, and gave Petitioner ample time to prepare his defense. Indeed, during the administrative review of this claim, the Facility Head found that the DI went above and beyond her duty to assist Petitioner.  Response, Ex. 3, p. 6.  Nothing in the record even remotely supports Petitioner's claim that the DI was incompetent or partial.

Petitioner cites OP-060125. I.A in support of his claim that the DI was not qualified to serve in the position.  However, this regulation simply requires that disciplinary investigators be trained in the disciplinary process at least annually.  There has been no showing that Ms. Arthur had not received the required training, but even if she had not, a violation of the disciplinary regulation without more does not entitle Petitioner to relief.

**4.  Fourth Ground for Relief**

In his fourth and final ground for relief,[17] Petitioner claims that "[n]otwithstanding her lack of qualifications, the investigator's frustration could have been avoided had she simply followed policy and granted Petitioner's request for a 'Staff Representative.'" Petition, p. 20.  He claims that his request for a staff representative was erroneously

---

[17]This is listed as Petitioner's "Sub-Proposition Re: Ground Two." Petition, p. 20.

denied by the DI, and that she did not understand that the only way he could obtain documentary verification of certain security records "not available to inmates, directly, is through" a staff representative.  Id. at 21.  He claims that the "emotional reaction" of the DI to his requests underscores his need for a staff representative.  Id.

Inmates do not have a constitutional right to "retained or appointed counsel in disciplinary proceedings."  Wolff, 418 U.S. at 570; see also Baxter v. Palmigiano, 425 U.S. 308, 315 (1976).  In dicta, the Supreme Court has noted that where an,

> illiterate inmate is involved . . . or . . . the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

Wolff, 418 U.S. at 570.  But there is no constitutional requirement that an inmate be provided staff assistance in a  prison disciplinary proceeding if the inmate is literate and the case is not unduly complex.  Id.; see also Marshall v. Champion, No. 95-5187, 1996 WL 187535, at *2 (10th Cir. Apr. 18, 1996) (finding no entitlement to assistance of counsel during prison disciplinary proceedings and thus no constitutional violation by failure to appoint staff representative).

DOC policy is similar to the constitutional requirement, and though it permits "any" inmate to request a staff representative to assist with presenting a defense to a disciplinary charge, one will be assigned "only when an inmate is incapable of understanding the charge or presenting a defense . . . ." OP-060125. III.A.  According to the regulation, "[i]ncapable of presenting a defense" refers to an inmate's mental capacity. Id.  When a staff representative is assigned, the staff representative, among other tasks,

"assist[s] the inmate in investigating and presenting evidence."  OP-060125. III.B.1.d.
Petitioner argues that because the DI did not accede to all of his requests for documents,
a staff representative was necessary to help him obtain documents.  Petition, pp. 5-6, 20-
21.

Petitioner's RTS forms, documentary requests, and arguments demonstrate that
he is literate and understood the disciplinary charge against him.  Indeed, as a former
member of the bar of this state, Petitioner can hardly argue in good faith that he lacks the
mental capacity to defend himself in a prison disciplinary proceeding.  Petitioner clearly
was not constitutionally entitled to staff assistance and the DI's decision not to appoint
a staff representative neither violated prison regulations nor deprived him of any process
due. Wolff, 418 U.S. at 570.  Accordingly, it is recommended that relief be denied as to
Petitioner's claim that his right to due process was violated by the denial of a staff
representative.

In conclusion, the undersigned finds that prison officials afforded Petitioner
adequate due process protections in conjunction with his disciplinary hearing held
September 14, 2004.  Petitioner received advance notice of the charge, the opportunity
to present witnesses and documentary evidence, a statement of the evidence relied on
and the reasons for the decision, and the decision was supported by some evidence.

The conclusion that Petitioner was provided due process in connection with his
disciplinary hearing eliminates the need to examine the prison's internal due process
review procedure, as requested by Petitioner.  See Mitchell, 80 F.3d at 1446.

## **RECOMMENDATION**

For these reasons, the undersigned recommends that the petition for writ of habeas corpus [doc. no. 1] be **DENIED**.  Because Petitioner submitted a sur-sur-reply, his motion for an extension of time to file the sur-sur-reply [doc. no. 43] is **DENIED**.[18]

Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by August 20, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 30th day of July, 2007.

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE

---

[18] The undersigned notes that nothing from the tape of Petitioner's disciplinary hearing was considered in assessing the merits of the petition.